[No. 13788. Department One. — November 7, 1890.]

· 86  335|
117  211|
118   43|

WEST COAST LUMBER COMPANY, Respondents, *v.* J. M. APFIELD et al., Defendants. C. H. LOW, Appellant.

Mechanic's Lien — Landlord and Tenant — Improvements on Leased Premises — Lien upon Land — Building Subject to Removal — Repayment of Lien. — When a tenant has erected a building on a leased lot, which largely increases the rental value of the premises, even if the building is subject to removal at the expiration of the lease, he cannot object on that ground to having the lien charged upon his interest in the land, if the lease provides that the building cannot be removed until all taxes, rents, and debts are paid, under which provision the landlord may insist that the amount of such lien paid to protect his realty shall be repaid before removal of the building.

Id. — Construction of Lease — Appurtenances — Surrender — Removal of Improvements. — When a lease of a vacant lot by its terms demises the real property, with its appurtenances, and grants no express right to remove a building permanently erected thereupon, and the tenant covenants to surrender, at the expiration of the term, "in as good state and condition as reasonable wear and tear will permit, damage by the elements alone excepted," the lease includes all buildings which may become appurtenant to the land by being imbedded in it and permanently resting upon it; and a proviso in the lease, that "no building shall be removed until the taxes shall be fully paid, and until all rents and indebtedness have been paid," will not prevent such permanent buildings from becoming the property of the landlord; and there is no right of removal, except of such buildings as do not partake of the realty.

Id. — Reformation of Lease — Rights of Bona Fide Lien-holders — Merger of Oral Negotiations. — If, by mistake, the parties to a lease have failed to express their intention in the making of the instrument, as to the removal of buildings by the lessee, it may be revised and reformed, as between the parties thereto, upon proper showing of the fact, but it cannot be so done as to prejudice the rights of lien-holders, acquired in good faith and for value, without notice of the mistake; and if there is no attempt

at such reformation, in an action to enforce a lien upon the land for materials furnished for the erection of such buildings, the written lease of the land and appurtenances must be considered as merging and superseding all oral negotiations or stipulations concerning the subject-matter of buildings, which preceded or accompanied the execution of the instrument.

ID. — ERECTION OF PERMANENT BUILDING BY TENANT — NOTICE — LIEN UPON LAND. — Where a landlord has leased land, and there is nothing to show or to put third parties upon notice that buildings permanently erected thereon would not inure to his benefit, and become a part of the realty, and the landlord has stood by and seen his tenants erect a large and costly building upon his lot without giving any notice, under section 1192 of the Code of Civil Procedure, that he would not be responsible for the same, he will not be heard to say that the men who performed labor upon and furnished material for such building have no lien upon his lot therefor, because the building has not become a part of the realty, and is not an improvement upon his property.

ID. — TENANT'S INTENTION TO REMOVE BUILDING — EVIDENCE. — Evidence of a tenant's intention in reference to a future removal of a building erected by him upon leased premises is inadmissible in an action to foreclose a lien of material-men upon the land and building.

ID. — QUESTION OF INTENTION — RIGHTS OF THIRD PARTIES. — Although as between a landlord and his lessee the question of whether a building about to be erected would become a part of the realty or not would depend largely upon the intention of the parties, it would not depend upon the intention of one of the parties, nor would a secret intention on the part of both defeat the rights of third parties who acted without notice of such intention, and upon the faith of the rule established by law, where no such intention existed.

ID. — FORECLOSURE OF LIEN — PARTIES — ERECTION OF BUILDING BY TENANTS AS PARTNERS — EXECUTOR OF DECEASED PARTNER — RIGHTS OF SURVIVING PARTNER. — Where two tenants as copartners have erected a building upon leased land, and one of them has died before the bringing of an action to foreclose a lien in favor of those who furnished material for the building, where no judgment is sought against the estate of the deceased partner, it is not error to refuse to continue the case, and make the executor of the deceased partner a party, as the surviving partner is fully authorized to defend for the partnership interest.

ID. — LIEN UPON BUILDING ERECTED BY PARTNERS — CHARGE AGAINST ONE PARTNER — VALIDITY OF LIEN. — A lien for materials furnished for a building erected by two tenants upon leased ground, filed against them both as partners, is not invalid because it shows upon its face that the original charge was made against one of them alone, it appearing that the claimant did not know at the time that the other tenant was interested in the building, or that they were copartners, but learned the facts in the case before the claim of lien was filed.

ID. — KNOWLEDGE AND CONSENT OF LANDLORD — FINDINGS — APPEAL — REVIEW OF EVIDENCE — ADMISSIONS. OF PLEADINGS — IMMATERIAL FINDING. — In an action to enforce a lien for materials furnished, a finding

that the building constructed upon leased land by tenants was constructed with the knowledge and consent of the landlord will not be set aside upon appeal because the evidence does not show his consent, where the finding that it was done with his knowledge is in accordance with the admissions of the pleadings.   The finding of his consent is unnecessary, and may be treated as surplusage.

Appeal from a judgment of the Superior Court of San Diego County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*D. L. Withington,* and *George W. Hardacre,* for Appellant.

*Trippet & Neale, Oscar Trippet, Hunsaker & Britt,* and *C. F. Holland,* for Respondents.

Fox, J.—1. Appellant is the owner in fee of lot L, block 734, New San Diego.   He leased the same for the term of five years to the defendant Apfield, who took one Newkirk into partnership with him, and they proceeded to erect a four-story building upon the lot, upon which divers liens were filed for labor and materials, upon which suits were brought, four of which suits were consolidated and tried together, resulting in judgments in favor of the claimants, from which judgments the defendant Low appeals, also from an order denying his motion for new trial.   The lease contains the following provision: "No buildings or improvements shall be removed until the taxes shall be fully paid, and until all rents and indebtedness have been paid.   And at the expiration of said term the said party of the second part will quit and surrender the said premises in as good state and condition as reasonable use and wear thereof will permit (damage by the elements alone excepted)." The demised premises are described as being "all that real property," etc., "with the appurtenances," etc.

There is no clause in the lease either reserving or granting to the lessee the right to remove any buildings

or improvements which have been or may be erected upon the premises. But, from the first sentence of the clause above quoted, the appellant argues that the building erected by the lessee upon said lot is not an improvement to or upon the same, and that laborers and material-men who furnish labor and material therefor cannot, by reason thereof, acquire a lien upon his interest (the fee) in said land, the lease being a matter of public record in the office of the county recorder. To this the respondent makes the pertinent suggestion that it is this very improvement to his realty that enables him to realize one hundred dollars per month rent therefor, for the term of the lease,— an amount which it could not command if the lot remained vacant. But assuming that the inference which appellant draws — that the building is subject to removal at the expiration of the lease — be true in fact, he is still protected by the terms of his lease, for it cannot be removed until all taxes, rents, and debts are paid. If, therefore, in order to protect his realty, he has to pay off these liens, the building, even under his theory of the case, cannot be removed until the money is repaid. But there is more than this of this lease. By its terms, he has demised all that there is of the "real property," with its appurtenances. That includes not only the land, but everything that is affixed, incidental, or appurtenant to the land. (Civ. Code, sec. 658.) That which is affixed includes that which is "imbedded into it, as in the case of walls, or permanently resting upon it, as in the case of buildings." (Civ. Code, sec. 660.) And that is deemed incidental or appurtenant to land which is by right used with the land for its benefit. (Civ. Code, sec. 662.) It is apparent that it was the erection of this building which gave to the otherwise vacant lot a rental value of more than a nominal amount. It was a large and substantial structure, not only apparently "permanently resting upon" the lot, but the proof shows that it was resting upon mud-sills "im-

bedded in it," and also that, when completed, it was "used with the land." To all appearance, the lot and building was a single entity of "real property."

Again, as we have before said, there was neither a reservation of right nor a grant of right to remove any buildings; but, on the contrary, there was an express covenant to surrender, at the expiration of the term, "in as good state and condition as reasonable use and wear thereof will permit, damage by the elements alone excepted." This at least was an express provision negativing the right to remove. "A tenant for years or at will has no other rights to the property than such as are given to him by the agreement or instrument by which his tenancy is acquired, or by the last section." (Civ. Code, sec. 820.) The preceding section, being the one referred to as "the last section," gives him the right to "occupy the buildings, take the annual products of the soil, work mines and quarries open at the commencement of his tenancy." Nowhere does the code give the right to remove buildings, unless that right is expressly granted or reserved in the instrument creating the tenancy, or the buildings are such, or so erected, as not to partake of the realty. "When a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed, except as provided in section 1019, belongs to the owner of the land, unless he chooses to require the former to remove it." (Civ. Code, sec. 1013.) "A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for purposes of trade, manufacture, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises." (Civ. Code, sec. 1019.) This would hardly authorize the removal of a four-story building erected to be used for stores and as a lodging and boarding house. It may

be that the parties have not expressed in this lease what they had agreed upon beforehand, and understood and intended at the time, but, having reduced the same to writing, and executed the same, it supersedes all oral negotiations or stipulations concerning the subject-matter which preceded or accompanied the execution of the instrument. (Civ. Code, sec. 1625.) If by mistake the parties have failed to express the intention in the making of the instrument, the appellant, upon proper showing of the fact, may have it revised and reformed; but that he has not sought to do here, and he could not have it so done as to prejudice the rights of third persons, acquired in good faith and for value. (Civ. Code, sec. 3399.) Here, with the record showing that he was the owner in fee, with nothing to show or to put third parties upon notice that buildings erected thereon would not inure to his benefit, and become a part of the realty, with actual knowledge of the construction of the building, and without giving any notice, under section 1192 of the Code of Civil Procedure, that he would not be responsible for the same, the appellant has stood by and seen his tenants erect a large and costly building upon his lot. He cannot now be heard to say that the men who performed labor upon and furnished material for such building have no lien upon his lot therefor, because the building has not become a part of the realty, and is not an improvement upon his property. Possibly he would have been entitled to have the decree foreclosing the lien so framed as to have the leasehold interest of the tenant first sold and his fee held liable only for deficiency, if there was any, but he asked for no such relief in the court below, and it is too late now to assign the failure to grant that relief as error upon which to reverse the judgment.

2. Appellant claims that it was error to exclude the evidence of the defendant Apfield as to his intention in reference to a future removal of the building. While

it is true that, as between the appellant and his lessee, the question of whether a building about to be erected would become a part of the realty or not would depend largely upon the intention of the parties, it is equally true that it would not depend upon the intention of one of the parties; nor would a secret intention on the part of both defeat the rights of third parties who acted without notice of such intention, and upon the faith of the rule established by law, where no such intention existed. It was not therefore error to reject this evidence.

3. There was no error in refusing to continue the case, and make Newkirk's executor a party. It was a partnership of Newkirk and Apfield that erected this building. No judgment was sought against the estate of Newkirk, and the surviving partner alone was fully authorized to defend for the partnership interest. Besides, Newkirk's interest had already been assigned before his death, and his assignee was also a party to the action.

4. The objection to the lien of the West Coast Lumber Company, filed May 26th, is not well taken. It shows upon its face that the original charge was made against Newkirk alone, because the claimant did not know at that time that Apfield was interested in the building, or a partner of Newkirk's, but that before the claim of lien was filed the company learned the fact, and the claim was filed against the firm. Defendant was not misled or prejudiced by reason of the claimant stating the whole fact in its notice of lien. The remaining objections to the claims of liens all go to the question of the time of filing, — whether the same were filed at the proper time or not. The record is not very clear as to when this building was finally and fully completed. As we read it, the last of the liens was filed within the time required by law after the last work was done on the building.

On the other hand, some of them would seem to have been filed before all work had ceased, but not until the building was so nearly completed as that only " trivial

imperfections" remained in the work. Under these circumstances, and in view of section 1187 of the Code of Civil Procedure (as amended March 15, 1887), we are not disposed to disturb the findings of the court on this point.

5. It is claimed that the court erred in finding that the building was constructed with the knowledge and consent of the appellant. The finding of consent was unnecessary, and may be treated as surplusage. The finding that it was done with his knowledge is in accordance with the admissions of the pleadings.

Judgment and order affirmed.

Paterson, J., and Sharpstein, J., concurred.

Hearing in Bank denied.