[Civ. No. 378.  Third Appellate District.—October 7, 1907.]

## CLARA CURRY, Respondent, v. CHARLES KING and W. O. PICKERELL, Appellants.

PRINCIPAL AND AGENT—FIDUCIARY RELATION—FRAUDULENT ACQUISITION
OF PROPERTY OF PRINCIPAL.—The relation of an agent to his prin-
cipal is fiduciary in its nature, and he is bound to treat with his
principal concerning the property over which he has been invested
with authority in the utmost good faith, and if he fails to show such
good faith affirmatively, a transaction whereby the agent acquired
the ownership thereof is deemed by the law to be fraudulent.

ID.—AUTHORITY OF AGENT TO SELL—FRAUDULENT USE OF PURCHASER'S
NAME—PURCHASE FOR AGENT AND RELATIVES—TRUST—SUPPORT OF
FINDINGS.—Where the evidence, notwithstanding conflict, supports
findings to the effect that the agent who was authorized to sell
the principal's property, and being in fact her agent and holding
himself out to the seller as such without interest in the property,
and pretending to have received a deposit from the nominal pur-
chaser which he had not received, and pretending to have found
a purchaser which he had not found, induced the owner, whom he
pretended to represent, to convey the property to the supposed pur-

chaser, whereas in fact it was his purpose, by circuitous and surreptitious means adopted by him, to purchase the property for himself and his relatives, the principal is entitled to enforce a trust against the agent and the pretended purchaser to whom the property was conveyed.

ID.—CONSTRUCTIVE FRAUD—VALUE OF LAND IMMATERIAL.—Where the case made by the complaint and proof was founded on constructive fraud, it is immaterial whether the land had increased or diminished in value after the transaction, and the court properly refused evidence for the defendants as to the value of the property.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. Geo. E. Church, Judge.

The facts are stated in the opinion of the court.

H. H. Welsh, J. F. Pryor, and N. C. Coldwell, for Appellants.

F. H. Short, and W. L. McGuire, for Respondent.

HART, J.—The purpose of this action is to secure a decree, declaring the property described in the complaint to be held in trust by the defendants for the plaintiff; that the deed under which the defendants hold said property be adjudged to have been obtained by fraud, and that the same is fraudulent, null and void, etc. In accordance with the allegations of the complaint and the prayer thereof, the decree adjudges that "the plaintiff is the owner in her own right and as her separate property of an undivided one-half interest" in the land described in the complaint; that "the defendant, W. O. Pickerell, holds the record title of said property in trust for the plaintiff"; that "the deed from the plaintiff herein to the defendant, W. O. Pickerell, was procured by misrepresentation and fraud," and that said Pickerell "holds said property as a mere trustee and agent and has no personal interest therein or beneficial estate in the same and the said deed of the plaintiff so delivered to said Pickerell, acknowledged and recorded, is hereby declared and decreed to be null and void, and the plaintiff is declared and decreed to be the owner in fee, seized and possessed and entitled to the possession of said property,

.and all thereof." The defendant Pickerell is further ordered in said decree, "by his proper deed of grant," to transfer and grant to the plaintiff the property which is the subject of the controversy, and by said decree the clerk of the court is named and appointed a commissioner of said court for the purpose of executing and delivering to plaintiff a proper deed, conveying and granting said property to plaintiff on behalf of said Pickerell, in case the latter fails and refuses to execute and deliver to plaintiff such deed to said property. From this judgment and an order denying their motion for a new trial the defendants prosecute this appeal.

The plaintiff and the defendant King in the month of October, 1902, entered into a written agreement with plaintiff relative to the sale of the land in controversy. The conclusion to be reached upon the record before us depends upon the solution of the question of the nature of the legal relations of the parties, as established by the contract mentioned and certain correspondence and transactions occurring between them after the expiration of the time at which said written agreement, by force of its own terms, became ineffective. It appears from the evidence that at the time of the making of the writing referred to plaintiff resided at Johannesburg, in Kern county, and the defendant King was a resident of Hanford, Kings county. King had addressed a letter to the plaintiff concerning the property in dispute, making inquiry as to whether it was for sale, and, if so, the price for which plaintiff would be willing to thus dispose of it. The plaintiff replied, stating that the sum she desired for the property was $2,000. Upon the receipt of said letter King prepared and sent to the plaintiff the written contract mentioned, and requested her to sign the same and return it to him. The plaintiff signed said contract and returned it to King by mail, as requested. The contract is in the following language:

"CONTRACT OF SALE.
"Hanford, Cal., 10-15, 1902.

"I hereby constitute and appoint Chas. & R. J. King my sole agent for the term of sixty days from date hereof to sell or negotiate the sale of the following described real property, to wit, The north one-half of the northwest quarter of section thirty, township twenty, south, range fifteen east, M. D. B. & M.

"Said sale to be made on the following terms, viz: Two thousand dollars cash on delivery of deed and abstract, and upon fulfillment of said terms, I agree to furnish abstract of title and convey said real property free of all incumbrance.

"I hereby contract and agree to pay the said Chas. & R. J. King, my agent, for selling said property, the following commissions, to wit: No commission.

(Signed)    "MRS. CLARA CURRY,

"Administrator."

An undivided one-half of the land over which the dispute arises and as described in the foregoing contract was acquired by the plaintiff through the estate of her deceased husband, the other undivided one-half thereof having been distributed, upon the administration of said estate, to her three minor children.

It is contended by the plaintiff that by the terms of said contract she constituted the defendant King her agent, with full power to sell for her the property mentioned therein within the time limited by the provisions thereof. On the other hand, the defendant King insists that the writing only amounts to and was intended as an option tendered by plaintiff to him to purchase said property within the time designated in the agreement. If, from a consideration of the entire transaction, including the written agreement and the correspondence passing between the parties subsequently to the expiration of the time limited in said written agreement and the acts and conduct of said parties at the time of the execution of the deed to the property in dispute, we can say that the legal relations of said parties as to the disposition of said property were those of principal and agent, then there can be no doubt that the evidence justifies the findings, which, in turn, fully fortify the decree.

It may be as well, in the beginning, to dispose of the question of the nature of the relations between the parties as established by the facts disclosed by the record. From the language of the written contract and the evidence produced at the trial we feel no constraint in declaring it to be our opinion that the purpose of the original agreement was simply and solely to invest King with the authority of an agent of the plaintiff to sell or negotiate the sale of the property therein described, and that the instrument was so intended

and understood by both the parties thereto. The language of the contract is so unobscure upon this point that there is no room or occasion for invoking the aid of the ordinary rules of construction to ascertain its real purpose and meaning. Plainly and unequivocally, as it is to be observed, it provides: "I hereby constitute and appoint Chas. and R. J. King *my sole agent* for the term of sixty days from date hereof *to sell or negotiate the sale* of the following described property, to-wit." Is it to be supposed that, had the parties intended the instrument as a mere agreement of option, by which the plaintiff offered to sell and granted to the defendant the right to purchase the property within the time limited, such language would have been employed to express such intention? King's business was that of a dealer in real estate, and it is reasonable to presume that he well knew, from his experience in that business, the distinction between an agreement of option and a contract of agency. It would hence seem conformable to a reasonable view of the writing that had he intended, through said writing, to acquire merely the right to purchase the property, having himself, according to his own testimony, prepared the agreement, he would have so phrased it as to have left no ground for doubt as to the character of the relations designed to be created thereby. That Mrs. Curry understood that, by the writing, she clothed King with the authority of an agent, is manifest from the following language in her letter to the defendant, under date of January 27, 1903, in which she informed him of having been offered $5,000.00 for the land: "So you can return the deposit and I will pay you your 05 per cent commission for the trouble you have been to out of the sale." But it appears that the time limited in the written agreement had expired prior to the beginning of the particular transaction *finally culminating in the execution* of the deed—that is, before the time at which a letter apprising plaintiff of the sale of the land to the appellant Pickerell had been sent by King, and before the telegram following that letter was sent to plaintiff by King asking her if he should accept a deposit on said sale. It was proved at the trial that after the plaintiff had received said letter and the telegram relative to the sale to Pickerell, several letters passed back and forth between the parties upon the subject of such purported sale. Most of these letters—at

least, most of the letters written by the plaintiff—were introduced in evidence. Among other things they show her acceptance of the proposition of sale to Pickerell and they also appear to have been written in reply to previous communications from King, their general tenor indicating that she looked upon King as her agent and that he was in fact acting that role for her. Therefore, assuming that at the time King informed Mrs. Curry of the alleged sale to Pickerell the written agreement had become ineffective and without force by lapse of the time limited therein (and we think the evidence shows such to be the fact), still, in our opinion, the correspondence thus shown to have passed between the parties, from and after the circumstances of the announcement by King of the sale of the property, together with the conduct of King and the character of the conversation between him and plaintiff, sufficiently establishes the fact that, as to the sale of the property, the defendant King not only assumed to act but did in fact act as her agent. And it would require no expansion of the imagination to hold, under the evidence, that the correspondence referred to, particularly the letter and telegram from King declaring the land had been sold and inquiring of plaintiff if he should accept a deposit thereon and her reply, authorizing him to accept the deposit, operated as an extension of the time specified in the agreement within which he might ''sell or negotiate the sale'' of the land. A fair construction of the entire transaction, as it is disclosed by the evidence, justifies the conclusion that King, in the transaction at least, assumed to act as plaintiff's agent; that plaintiff so treated his relation to her in the transaction; that defendant in effect told her that, as agent, he had sold to Pickerell, when he declared that unless she ratified said sale it would ''get him in a mix-up'' with Pickerell.

From the evidence it appears that a few days after the receipt of the letter by King from the plaintiff in which she stated that she had been offered by another party the sum of $5,000 for the land and requested King to return the deposit and cancel the agreement to sell to Pickerell, the defendant King went to Johannesburg for the purpose of interviewing the plaintiff relative to the matter. The plaintiff testified, in substance, as to the conversation between herself and the defendant King as follows: That King said to

her that she had, because of her refusal to approve the sale
to Pickerell, "got him in a kind of a mix-up over the affair";
that King said that he had taken Pickerell's money in good
faith, and that "he came up there to square himself with
Pickerell"; that she then stated to King that she could get
$5,000 for the property, and that hence she would not sell
it for $2,000; she declared that King read the deed twice
to her, and she still insisted that she did not want to sell
to Pickerell for $2,000, and King replied that "Pickerell
was a man of means, of influence, and if we would have
Pickerell in with us it would be a great help to us, because
Pickerell had money, and, of course, it takes money to make
money"; that "if we would let Pickerell have a half interest
that he [Pickerell] would make the place bring all it pos-
sibly could bring." "He said he [Chas. King] had no in-
terest in the matter at all"; that "said Pickerell was buying
it." The plaintiff then proceeded: "In this conversation
with Mr. King at Johannesburg he told me that he was act-
ing in our interests. He said he was simply there to square
himself with Pickerell, to place himself in the right light
with Pickerell, but, of course, was there in our interests.
He said he paid his own expenses and all there for that pur-
pose. He never at any time mentioned to me that anyone
other than Mr. Pickerell was interested in the purchase."
Plaintiff, after this conversation, accompanied by King, went
before a notary public and executed the deed. The testi-
mony of the plaintiff as to this conversation was corroborated
by her present husband in all its salient points.

Pickerell, who was a bookkeeper in the First National Bank
of Hanford, testified that he had absolutely no connection
with the transaction whatever; that he did not purchase
the land, nor did he authorize King or any other person to
purchase it for him. He said that he issued a check for
$1,000 in connection with the transaction, but that the same
was charged to the account of R. J. King, brother of de-
fendant King, and who was one of the purchasers of the
property. Before the sale, he said, he never had talked
with the defendant King about the transaction; that Arthur
King, also one of the purchasers, had said to him that he
wanted to buy in his (Pickerell's) name. He declared that
he had no interest in the deed or the property. The defend-
ant King admitted that he never received a deposit on the

purported sale, but declared that he could have obtained
the deposit from Arthur King at any time he called for it.
It also appears from King's testimony that the land was
bought jointly by his brother, his nephew and himself, but
he said that he acquired his interest in it "a week, or some-
thing like that, after the deed was made at Johannesburg."
King's version of the conversation between himself and plain-
tiff differed in many important particulars from the story
thereof as detailed by plaintiff and her husband. But the
court's findings from the evidence upon all points where
there is a substantial conflict are binding upon this court.

The relation of the plaintiff to the defendant, as well es-
tablished by the facts and assumed by him throughout the
transaction, was that of an agent, and consequently fiduciary
in its nature. He was, as her agent, charged in full measure
with the duty of good faith in his dealings with her touch-
ing the subject matter of his authority as such agent. The
proposition here stated is so well and conclusively settled
that the citation of authorities upon the subject would seem
to involve only a waste of time. The animating principle
of the proposition is that no one should nor will be permitted
to enjoy the fruits of an advantage taken of a fiduciary re-
lation, whose dominant characteristic is the confidence reposed
by one in another. The act of an agent, within the scope
of his authority, is the act of his principal, and hence the
authority of an agent is so fraught with responsibility and
grave concern to his principal, dealing as it does with the
property rights of the latter, that it proceeds out of the
highest considerations of confidence, which, the principles
of equity demand, must be preserved to its utmost in trans-
actions involving the exercise of such authority. There-
fore, an agent will not be allowed to deal in his own be-
half with his principal with reference to the subject mat-
ter of the agency, unless he makes full, complete and honest
disclosure of the truth of the transaction. He is bound to
treat with his principal concerning the property over which
he has been vested with authority in the utmost good faith,
and so religiously does equity require adherence to this rule
that a transaction between them as to the property whereby
the agent acquires the ownership thereof, is, upon its face,
deemed by the law to be fraudulent. As illustrative of the
application by the text-writers and the courts of the prin-

ciples here discussed we direct attention to the following authorities: Wharton on Agency, secs. 231, 232; 1 Story's Equity, 360a; *Benham* v. *Rome,* 2 Cal. 387, [56 Am. Dec. 319]; *Hunsaker* v. *Sturgis,* 29 Cal. 142; *Hardenbergh* v. *Bacon,* 33 Cal. 356; *Rubidoex* v. *Parks,* 48 Cal. 215; *Golson* v. *Dunlap,* 73 Cal. 162, [14 Pac. 576]; *De Mallagh* v. *De Mallagh,* 77 Cal. 126, [19 Pac. 256]; *Sterling* v. *Smith,* 77 Cal. 343, [32 Pac. 320]; *Smith* v. *Townsend,* 109 Mass. 500; *Copeland* v. *Mercantile Ins. Co.,* 6 Pick. (Mass.) 204; *Condit* v. *Blackwell,* 22 N. J. Eq. 484; *Tyler* v. *Sanborn,* 128 Ill. 136, [15 Am. St. Rep. 101, 21 N. E. 193]. In *Rubidoex* v. *Parks,* 48 Cal. 215, the court (we quote the syllabus) lays down the rule as follows: "The agent and principal are not absolutely prohibited from dealing with each other in respect to the subject matter of the agency or trust; *but in all their dealings with each other, the utmost good faith is required, and the burden of proof is on the agent to show affirmatively that he acted in good faith, fairly and honestly.*" (Italics are ours.)

The evidence in the case at bar shows that King not only failed to make full disclosure to the plaintiff of the facts of the alleged sale, as it was his duty to do, but that he grossly misrepresented the facts, and by such misrepresentation persuaded plaintiff to convey the property. He assured her that he had no interest in the matter whatever; that she would probably profit by selling a half interest to Pickerell, who was a man of means and influence. Pickerell, as seen, had no substantial connection with the transaction whatsoever. He was, according to his own testimony, a mere figurehead, used by the defendant (perhaps at the time unconsciously to Pickerell himself) for the accomplishment of the purposes of King's scheme to secure the ownership of the property for himself and relatives. In fact, there is nothing in the transaction, as it was conducted on King's part, which, under the evidence, commends it as one in which there was the slightest semblance of good faith. But, it is declared by the appellants, that "if," borrowing the language of their brief, "there was a relation of confidence between the parties, then each and all of these representations were immaterial, for the reason that the deed would be constructively fraudulent even without any representations at all." Undoubtedly the confidential relation between the parties being shown, the burden of affirmatively proving the good faith of the

transaction rested upon the defendant. But the testimony of the alleged misrepresentations made by King to the plaintiff, while undoubtedly admissible even upon the theory that such misrepresentations were part of the transaction and of the conversation, necessarily involved facts bearing upon the constructive fraud alleged in the complaint, and hence for that purpose was directly to the point. In other words, the testimony of the conversation was no doubt offered primarily for the purpose of disclosing the legal relations of the parties in the transaction, and the fact that misrepresentations were made by King to the plaintiff was necessarily brought out as a part of the conversation. The evidence of the alleged misrepresentations, however, was itself proof of constructive fraud, because, in their very nature: they carried with them the obviously material and important fact of the concealment of the real truth of the transaction as it was managed by the defendant.

The findings upon all the vital issues tendered and tried are, as before suggested, sufficiently supported by the evidence. As is aptly said by counsel for the respondent, "the case is one where the purchaser, being in fact and holding himself out to the seller as her agent, and pretending to have received a deposit, which he had not received, and pretending to have found a purchaser, which he had not found, induced the owner, whom he pretended to represent, to convey the property to the supposed purchaser," whereas, in fact, it was his purpose by the circuitous and surreptitious means shown to have been adopted by him, to purchase it for himself and relatives.

There were some exceptions reserved to the rulings of the court, which it is sought to make available here, refusing to admit evidence of the value of the property, said evidence having been offered by the appellant apparently upon the theory that the question of value was material in determining whether the equitable relief asked for should be granted. The rulings of the court are unobjectionable under the issues. The theory of the case, as presented by the complaint, as we have seen, was founded upon constructive fraud, and upon that theory it was immaterial whether the land had increased or depreciated in value after the transaction. The only questions to be determined were: Was King the

6 Cal. App.—37

agent of the plaintiff, and, if so, did he purchase the property for himself under circumstances violative of the good faith with which an agent is charged in his dealings as such with his principal?

We find no errors in the record. The judgment and order are affirmed.

Chipman, P. J., and Burnett, J., concurred.