[Civ. No. 13296. First Dist., Div. Two. Jan. 20, 1948.]

V. SANDS et al., Appellants, v. EAGLE OIL AND REFINING CO., INC., Respondent.

Marvin Sherwin and Gerald Wallace for Appellants.

Keith, Creede & Sedgwick for Respondent.

NOURSE, P. J.—This action was instituted in the justice's court by appellant V. Sands for the recovery of unpaid rent under an alleged written lease from him to respondent, Eagle Oil and Refining Company, Incorporated. Respondent denied that the parties entered into said lease and with authorization of the court filed a cross-complaint bringing in appellant J. H. Tarman as a cross-defendant. As amended the cross-complaint alleged in substance that said Tarman was respondent's agent for the negotiation of the lease but that he secretly acted in his own interest and as agent of Sands and induced respondent by certain knowingly false representations as to the ownership of the property, the advantages of the lease and the fairness of the rental demanded to enter into the purported lease with Sands, who was not the owner of the premises, and to pay under that lease a monthly rent of $65 whereas the fair and reasonable rental value of the premises was $40 per month, with prayer for repayment of the money had and received by Sands, damages for fraud of Tarman and rescission of the purported lease. As the recovery sought in the cross-complaint was in excess of the jurisdiction of the justice's court the cause was transferred to the Superior Court for the County

of Alameda. A supplement to the complaint recited that Sands had transferred the property to Tarman after the commencement of the action, and asked that Tarman be substituted as plaintiff. Sands and Tarman appeal from a judgment that they take nothing and pay $215 with interest and costs to respondent.

Respondent, a producer and distributor of petroleum products with headquarters near Los Angeles, entered the Bay area in January, 1941, and came in the market for leases on filling stations. Appellant Tarman, a real estate broker experienced in securing service-station leases for oil companies, offered his services as a broker to respondent, which services were accepted. It was agreed that respondent would not pay any commissions to Tarman, the customary procedure being that in matters of leasing commission is paid by the lessor. During 10 months of the year 1941, Tarman secured a number of leases for respondent. During that time respondent did not request any other broker to look for locations and no locations submitted by other brokers were accepted. Tarman worked very closely with respondent's employees on all leasing. He searched the title records in respondent's behalf and once submitted a bill for such research which respondent declined to pay. On a few occasions respondent paid his traveling expenses. About May or June, 1941, respondent furnished Tarman with Eagle Oil Company business cards designating him as "real estate representative." He was, however, not an employee.

Approximately a month before March 10, 1941, Jack Campbell, local division manager of respondent under Cecil L. Foster, the assistant vice-president in charge of the Bay area, mentioned to Tarman the service station at 5318 College Avenue in Oakland, involved in this suit, and asked him to find out about the title and to fix up a deal. After Tarman originally proposed a rental of $100 a month, Campbell and he decided on a rent of $65 monthly for the first two years and $75 monthly after that, this rental being figured on the basis of estimated future sales of 6,500 gallons a month. Campbell visited the premises more than once and sent in a report when he submitted the lease to headquarters. Tarman and Campbell flew to Los Angeles at respondent's expense to discuss this and other locations with the general manager of respondent. The lease is dated March 10, 1941. Appellant Sands, mentioned by Tarman as the owner, is

designated lessor, the rental being payable care of J. H. Tarman at Tarman's home address.

The lease proved disadvantageous; the sales did not in any month amount to more than approximately 3,600 gallons. The service station was closed in July, 1941, but respondent continued to pay rent. After respondent had discussed with Tarman trying cancellation of the lease, Tarman wrote respondent under date of February 18, 1942, that he had talked to Sands about cancelling the lease and that Sands would consider $1,500 for full cancellation; he, Tarman, believed he could get it down to $1,250. No agreement was reached. When in May, 1942, respondent stopped payment of the monthly rent, suit was brought with Sands as plaintiff in which $130 for two months' rent was recovered. The pleadings of this earlier suit were introduced in evidence by appellants to show that respondent then admitted the execution of the lease; at that time the unsuccessful defense was frustration by wartime restrictions. On December 19, 1942, Knowles, a division manager of respondent, called on Sands to try to get out of the lease. Sands then told him that he did not have a lease with respondent and did not own the property leased in his name. He gave a written statement to that effect, received in evidence. He further told Knowles that Tarman had no authority to do anything for him. After the rent recovered in the first suit no further rent was paid by respondent.

At the trial in this, the second suit, Tarman testified that the College Avenue property was his own property. He purchased it at the beginning of the negotiations for the lease to respondent before the lease was signed. He would not have purchased it but for the lease. He took the property in the name of Galise, the elevator boy in his office building, as a dummy, and when Galise left town Tarman had it transferred in the name of Sands, his brother-in-law. On the lease Tarman signed the name of Sands as lessor. He testified he had a general power of attorney from Sands but could not produce it when demand for it was made. Sands confirmed the existence of a power of attorney; however all his testimony was full of contradictions. The evidence from the recorder's office showed that the deed to Galise was executed and acknowledged on March 11, 1941, recorded March 26, 1941, the deed from Galise to Sands executed and acknowledged on March 24, 1941, and also recorded March 26, 1941.

There was evidence that the date of March 10 on the lease was the date of the preparation of the lease in Oakland, after which date it was sent to headquarters where it was later signed by Mr. Sterling for respondent. Tarman contended that the officers of respondent knew that Sands was a dummy and that he had himself informed Mr. Sterling of the manner in which he treated such leases. Campbell testified that he knew from the beginning that Sands was a dummy and who the owner was, but his superiors Foster and Sterling denied any such knowledge prior to the statement of Sands of December 19, 1942. Respondent tried to impeach Campbell's testimony by bringing out that he was in the real estate business with Tarman for some time after he left the employment of respondent, that during his employment with respondent he took, together with Tarman, a lease on a gas station for a rent of $25 a month, which station they then rented through a dummy to respondent for $100 a month—a fact denied by Campbell—and that as to the College Avenue service station he reported to headquarters an estimated sale of 9,000 gallons a month.

The findings of the court were in all respects in accord with respondent's allegations except that the fair and reasonable rental value of the premises was found to be $50 a month and the amount overpaid by respondent $215. As a conclusion of law the court found respondent entitled to rescission of the purported lease but no rescission was pronounced in conformity with a finding negativing the execution of the lease.

Appellants contend mainly that fraud was not sufficiently pleaded and that the evidence did not support the court's findings of nonexecution of the lease, of existence of the relation of agent and principal between Tarman and respondent, of misrepresentations of Tarman as to the advantages of the lease and the fairness of the rent, of reliance by respondent on misrepresentations of Tarman, and of detriment suffered by respondent in reliance on said misrepresentations. Other minor contentions of appellants will be noticed later.

Of appellants' contentions the question of the existence or nonexistence of an agency relation between Tarman and respondent is of primary importance as the requirements of pleading and proof in case of constructive fraud by breach of a confidential relation differ from those as to actual fraud. Although not all professional contact between a real

estate broker and a person desiring to buy or lease real estate need lead to a relation of agency between them, as the broker can act solely in behalf of the adverse party (*Hicks* v. *Wilson,* 197 Cal. 269, 273 [240 P. 289]) or sometimes only as a middleman whose duty is performed when he has brought the parties together (*Anderson* v. *Thacher,* 76 Cal.App.2d 50, 67 [172 P.2d 533]), the facts above stated support the finding of an agency relation in the present case. The fact that Tarman was required to look to the lessors for compensation does not militate against his being the agent of respondent. *Stephens* v. *Ahrens,* 179 Cal. 743, 746 [178 P. 863]; *Stewart* v. *Drew,* 101 Vt. 47 [140 A. 488, 490]; *Curry* v. *King,* 6 Cal. App. 568, 571 [92 P. 662]. ■ The custom that commission for the conclusion of a lease is paid by the lessor cannot deprive the lessee of the possibility of having the confidential assistance of a broker. The fact that the Eagle Oil Company business cards, the clearest indication of the intimate. relation of the parties, were furnished to Tarman some time after the conclusion of the transaction here under review does not diminish their importance as there is no contention that the relation between the parties differed at different times and the general tenor of the testimony of Tarman and Campbell clearly shows that in the College Avenue transaction Tarman acted in the same way and in the same capacity as in his other transactions with respondent during the year 1941. The latter circumstance distinguishes the present case from *Baker* v. *Brown,* 82 Cal. 64 [22 P. 879], relied on by appellant, which case goes very far in denying as to a specific transaction an agency relation between a client and her normal broker. Moreover in the Baker case reversal was at any rate required because of the improper character of the relief granted.

■ If it be accepted that a relation of principal and agent existed between respondent and Tarman, then the evidence clearly supports the conclusion that Tarman violated his fiduciary duties as an agent. " 'The law of California imposed on . . . the real estate agent the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary. Violation of his trust is subject to the same punitory consequences that are provided for a disloyal or recreant trustee. (*King* v. *Wise,* 43 Cal. 628.)' (*Langford* v. *Thomas,* 200 Cal. 192, 196 [252 P. 602].) Such an agent is charged with the duty of fullest disclosure of all

material facts concerning the transaction that might affect the principal's decision. (citations).'' *Rattray* v. *Scudder,* 28 Cal.2d 214, 222-223 [169 P.2d 371, 164 A.L.R. 1356]; subdivision 3 of section 2322 together with sections 2228 and 2230 of the Civil Code. The latter code section and a great number of decisions, among which *Burke* v. *Bours,* 92 Cal. 108 [28 P. 57] is a leading authority, show that the law prohibits an agent from concluding with himself directly or indirectly any transaction in which he is employed as an agent, without the fullest disclosure of the fact and all circumstances relating to it, and without permission or acquiescence of the principal with full knowledge of all these facts. Here Tarman himself testified that he was the lessor concealed behind the dummy Sands. However, appellants argue that the knowledge of this fact, admitted at the trial by Campbell, must be imputed to respondent and that therefore there was no concealment, although the trial court was entitled to believe the testimony of Campbell's superiors that they had no actual knowledge of the fact that Sands was a dummy for Tarman or at all.

It is true that in general the knowledge of an agent which he is under a duty to disclose to his principal or to another agent of the principal, is to be imputed to the principal. (Rest. Agency, § 275; *Herzog* v. *Capital Co.,* 27 Cal.2d 349, 353 [164 P.2d 8]; Civ. Code, § 2332.) However this rule is not without exceptions pertinent to this case. One is that if the agent and the third party act in collusion against the principal the principal will not be held bound by the knowledge of the agent. *First Nat. Bank* v. *Reed,* 198 Cal. 252, 259 [244 P. 368]. Another excludes application of the general rule when the third party knows that the agent will not advise the principal. *Mutual Life Ins. Co.* v. *Hilton-Green,* 241 U.S. 613, 622 [36 S.Ct. 676, 60 L.Ed. 1202, 1211] where it is said: ''The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest. But this general rule does not apply when the third party knows there is no foundation for the ordinary presumption,—when he is acquainted with circumstances plainly indicating that the agent will not advise his principal. The rule is intended to protect those who exercise good faith, and not as a shield

for unfair dealings. (Citations.)'' In *Thompson* v. *Stoakes,* 46 Cal.App.2d 285, 292 [115 P.2d 830], the exception is given wider scope by the following statement: ''As between two innocent parties, notice to the agent of one is notice to the principal, but, as between the principal and the fraudulent agent, notice of another agent should not be imputed to the principal.'' Tarman's letter of February 18, 1942, nearly a year after the signing of the lease, as to his pretended cancellation negotiations with Sands, shows that he was confident that Campbell had not disclosed and would not disclose the actual situation and that he could continue his misrepresentations in reliance on respondent's lack of knowledge. Under these circumstances no constructive knowledge should be imputed to respondent in appellants' behalf even if the evidence were insufficient to prove actual collusion between Campbell and Tarman.

When, as in this case, the agent concludes a real estate transaction with himself without the knowledge of his principal such a transaction will always be set aside at the option of the principal. Absence of actual fraud in the transaction; of undue advantage for the agent; of injury to the principal or of other similar features is then immaterial. The rule is intended to prevent temptation and the possibility of wrong. Only ratification by the principal after full knowledge of all facts can defeat his right to avoid the transaction. *Burke* v. *Bours,* 92 Cal. 108 [28 P. 57]; *Sterling* v. *Smith,* 97 Cal. 343, 347 [32 P. 320]; *Newell-Murdoch Realty Co.* v. *Wickham,* 183 Cal. 39, 44 [190 P. 359]; *Butler* v. *Agnew,* 9 Cal.App. 327, 332 [99 P. 395]; *Silver* v. *Logue,* 127 Cal.App. 565, 572 [16 P.2d 183]. In *Curry* v. *King,* 6 Cal.App. 568 [92 P. 662], a case that presents many points of resemblance with the case here under review but where King, the agent of the seller, surreptitiously purchased for himself and relatives, the court concluded on pages 577-578: ''The only questions to be determined were: Was King the agent of the plaintiff, and, if so, did he purchase the property for himself under circumstances violative of the good faith with which an agent is charged in his dealings as such with his principal?''

Therefore the only allegations required as to the cause of action of respondent were those relating to the existence of the agency, the violation by surreptitious transaction in the agent's own behalf and the difference between the

amounts paid under the lease and the fair value of the use of the premises which respondent received. We hold that respondent's allegations in these respects were sufficient to state a cause of action. ■ Even if the agency relation were only alleged by inference, as contended by appellants, or if the allegations as to the manner in which Tarman took a concealed adverse interest in the transaction were uncertain or ambiguous, such defects of form, which are subject to special demurrer but can be cured by amendment, were waived where no special demurrer was interposed. *Hill* v. *Haskin,* 51 Cal. 175; *Colton* v. *Onderdonk,* 69 Cal. 155, 157 [10 P. 395, 58 Am.St.Rep. 556]; *People* v. *McDonald,* 200 Cal. 716, 717 [255 P. 180]; *Abos* v. *Martyn,* 31 Cal.App.2d 705, 708 [88 P.2d 797]. ■ The findings responsive to said allegations were supported by the evidence, and they fully support the judgment. It is then immaterial whether other findings objected to are sustained by the evidence or not. *Kellerman* v. *Maier,* 116 Cal. 416, 422 [48 P. 377], *Hatton* v. *Gregg,* 4 Cal.App. 542, 546 [88 P. 594]. They may be disregarded as surplusage. *West Coast Lumber Co.* v. *Apfield,* 86 Cal. 335, 342 [24 P. 993]; *Starr Piano Co.* v. *Martin,* 119 Cal.App. 642, 644 [7 P.2d 383]; *Bank of Perris* v. *Sandor,* 24 Cal.App.2d 349, 352 [75 P.2d 87].

■ Although a transaction by which an agent deals with himself without the consent of the principal in a matter in which he is employed as an agent is not absolutely void, as it may be ratified by the principal upon full knowledge of all the facts (*Petray* v. *First Nat. Bank,* 92 Cal.App. 86, 90 [267 P. 711] and authorities there cited), nevertheless, where there is no such ratification, it may be treated as void without a formal rescission as there is no meeting of the minds of two parties. 1 Cal.Jur. 798; *Pacific Vinegar etc. Works* v. *Smith,* 145 Cal. 352, 362 [78 P. 550, 104 Am.St.Rep. 442]; *Salisbury* v. *Yawger,* 184 Cal. 783, 789 [195 P. 682]; *Cisco* v. *Van Lew,* 60 Cal.App.2d 575, 585 [141 P.2d 433]; *Stiebel* v. *Lissberger,* 166 App.Div. 164 [151 N.Y.S. 822, 824-825].

Appellants' contention that respondent as lessee whose possession was not disturbed could not question the title of the purported lessor is without merit. ■ Fraud or misrepresentations used to induce the lessee to enter into the lease relieve him from the estoppel to dispute the lessor's title. *Kearney Investment Co.* v. *Golden Gate Ferry Co.,* 198

Cal. 560, 563-564 [246 P. 322]. Moreover not Sands' lack of title but Tarman's hidden interest in the lease is the decisive element in the case.

Appellants' claim that in equity respondent should be required to reimburse appellants for an amount of approximately $900 spent by Tarman for repairs and improvements in the College Avenue service station as condition for the signing of the lease by respondent has no basis in pleadings or evidence. There is nothing to show that the repairs and improvements made did not increase the value of the station owned by Tarman.

Judgment affirmed.

Goodell, J., and Dooling, J., concurred.