SHOEMAKER, J.
 

 Plaintiff Pacific Intermountain Express Co. appeals from a summary judgment in favor of defendant and cross-complainant Barbro Alexander.
 

 The record shows that on August 30, 1957, Mar Monte Corporation leased to plaintiff the second and third floors and a portion of the basement of a building located in Oakland, California. The lease provided for a 15-year term with options to renew for an additional 15-year period. Mar Monte was to undertake certain specified alterations in the building and was obligated to complete this remodeling by December 1, 1957, unless acts of God or other enumerated causes resulted in unavoidable delays. If for any reason Mar Monte failed to deliver possession by March 15, 1958, plaintiff was given the right to cancel the lease. The basic monthly rental was to be $7,704.40. Provision was also made that commencing with the year 1959, plaintiff was to pay 72 per cent of any increase
 
 *642
 
 in city and county taxes levied upon the land and building over and above those levied for the fiscal year 1958-1959, and was to be paid in monthly installments of 6 per cent.
 

 By March 3, 1958, Mar Monte had completed the contemplated alterations at a total cost of approximately $450,000. Plaintiff entered into possession of the demised premises on March 15, 1958. The assessed value of the building, for purposes of city and county taxes, was increased in the fiscal year 1958-1959, by $55,150 over that for the year 1957-1958. Although the physical condition of the building remained substantially the same as it had been on March 3, 1958, the assessed value of the building for the fiscal year 1959-1960 was increased by an additional $126,450. Meanwhile, on January 23, 1959, Mar Monte sold the land and building and assigned its lease with the plaintiff to Barbro Alexander.
 

 On June 29, 1960, plaintiff filed this action for declaratory relief against Barbro Alexander.
 
 [1]
 
 Plaintiff alleged that an actual controversy had arisen between the parties as to the proper interpretation of that provision in the lease requiring plaintiff to pay a portion of the increased property taxes. Although defendant contended that plaintiff was obligated to pay 72 per cent of the increased taxes,
 
 however caused,
 
 over those levied in the year 1958-1959, plaintiff was opposed to this interpretation in two respects.
 

 Plaintiff’s position, first of all, is that its obligation to pay increased taxes did not extend to any increase directly resulting from the remodeling work done by Mar Monte. Plaintiff points out that the “tax day” for the fiscal year 1958-1959 fell on March 3, 1958. On that date, although Mar Monte had completed its alterations to the building, the tax assessor failed to appraise the bulk of the improvements. As a result of this omission, the increased tax valuation which ought to have accrued in the fiscal year 1958-1959 was, in large part, deferred until the fiscal year 1959-1960. Since the lease specifically provided that the remodeling was to be completed, if possible, by December 1, 1957, plaintiff argues that the parties intended the improvements to be reflected in the 1958-1959 valuation. Plaintiff sought a declaration that its obligation to pay increased taxes did not encompass any increase resulting directly from the remodeling done by Mar Monte.
 

 As a second element of controversy between the parties,
 
 *643
 
 plaintiff asserts that a disagreement had arisen as to whether plaintiff’s liability for increased taxes extended to an increase resulting from improvements made on portions of the premises not included under its lease. Plaintiff urges that its tax obligation did not include any such increase, and it accordingly prayed for a judicial declaration to that effect.
 

 Defendant’s answer consisted of a denial that the lease was susceptible of the interpretation contended for by plaintiff. Defendant also cross-complained for “additional rental” in the amount of $6,375.18, asserting that plaintiff had failed to pay 6 per cent of the increase in taxes above the base year 1958-1959 for the months of May through November 1960.
 

 Defendant and cross-complainant then moved for summary judgment in her favor, contending that the written lease constituted a clear, unambiguous and complete expression of the parties’ agreement, and that the court was therefore without power to receive other evidence in derogation of its terms; and further, that even though plaintiff might have been entitled, upon a proper showing, to obtain reformation of the lease, as against the original lessor, Mar Monte, such a remedy was not available against a bona fide purchaser such as defendant, who had purchased the lease in reliance upon its plain meaning.
 

 After a hearing upon the motion, the court found the lease to be an integrated agreement which was both clear and unambiguous. The court further found that plaintiff was not entitled to any of the declarations prayed for in its complaint. Judgment was accordingly entered that plaintiff take nothing by its complaint, and that defendant recover the amount prayed for in her cross-complaint.
 

 Appellant, both on this appeal and throughout the proceedings before the lower court, seeks to interpret a written lease in direct contravention of its express terms, but appellant does
 
 not
 
 seek reformation. Since appellant did not commence this action until the original lessor, Mar Monte, had sold its interest in the real property and the lease to respondent, appellant was effectively foreclosed from seeking to reform the lease to express the intent of the original parties. Pursuant to Civil Code, section 3399, reformation is available, upon a proper showing, only “so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value,” (See
 
 West Coast Lumber Co.
 
 v.
 
 *644
 

 Apfield
 
 (1890) 86 Cal. 335, 340 [24 P. 993];
 
 Baines
 
 v.
 
 Zuieback
 
 (1948) 84 Cal.App.2d 483, 491 [191 P.2d 67].) We must presume that respondent purchased Mar Monte’s interest in reliance upon the plain meaning of the written lease. In this circumstance, appellant was not entitled to show that the original parties had actually intended to make a contract far different from that embodied in the writing.
 

 Being thus precluded from reforming the document, appellant sought to establish (1) that the lease was reasonably susceptible of the interpretation that it contended for, or, (2) that certain of its terms were so unclear or ambiguous as to warrant the admission of extrinsic evidence of their meaning. The lower court, as above noted, found against appellant on both of these questions, a result with which we are in accord.
 

 That the lease was intended as a complete integration of the parties’ agreement stands out very clearly, for it is a document of some 25 pages in length which thoroughly covers all of the subjects normally contained in such a contract. Article IV of the lease sets forth the rental for which appellant shall be liable. After providing for a basic monthly rental of $7,704.40, the lease goes on to state that appellant shall pay an “additional rental” based upon the amount of city and county taxes “which shall be levied upon the land and building appertaining thereto, in which said demised premises are located, as they will be for the fiscal year 1958-1959. It is, therefore, agreed that, in the event that the amount of the said City of Oakland and County of Alameda taxes levied on said land and building for any of the years 1959 to the end of the term of this lease shall be greater than the said taxes thereon for the fiscal year 1958-1959, then the monthly instalments of rent due hereunder upon the first days of the twelve (12) consecutive months from and including May of the year next succeeding the year for which the taxes shall have been increased as aforesaid, shall be increased six per cent of the amount of the increase in City of Oakland and County of Alameda taxes as aforesaid over and above the said City of Oakland and County of Alameda taxes for the fiscal year 1958-1959. . . . The term ‘taxes,’ as used in this connection, means only the ordinary City and County taxes upon the real property described on page 1 hereof, and the improvements thereon, and excludes special assessments and other public charges.” (Page 1 of the lease contains a legal descrip
 
 *645
 
 tion of the real property upon which the building containing the demised premises is located.)
 

 Although this rental clause would appear suspectible of only one interpretation, appellant contends that it is unclear from the language used whether or not the “additional rental” was to encompass tax increases resulting from the improvements installed by Mar Monte prior to March 3, 1958. In support of this position, appellant directs this court’s attention to two alleged ambiguities in the lease.
 

 Appellant first points out that the lease provided that the “additional rent . . . has been based upon the amount of City of Oakland and County of Alameda taxes which shall be levied upon the land and building ... as they will be for the fiscal year 1958-1959.” It is appellant’s position that the phrase “as
 
 they
 
 will be” refers to “land and building” rather than to “taxes.” This argument is wholly without merit. Indeed, it is difficult to conceive of a more strained construction of language which is clear upon its face. The phrase “which shall be levied upon the land and building” is a subordinate clause modifying the word “taxes.” While “taxes ... as they will be” in a given fiscal year has a readily understandable meaning, “land and building ... as they will be” during a similar period of time is at best a nebulous concept. Furthermore, the language which appellant seeks to construe in its favor is a mere preface to the provision specifically setting forth the “additional rental” for which appellant shall be liable. Pursuant to this provision, the sole condition to appellant’s liability is an increase in taxes, for any of the years 1959 to the end of the term, over those levied in the fiscal year 1958-1959. In view of this express language in the rental covenant, it cannot be doubted that the previous reference was to “taxes ... as they will be for the fiscal year 1958-1959.”
 

 Appellant’s second argument is that the “additional rental” provision becomes ambiguous when read in conjunction with the clause requiring the lessor, if possible, to complete its remodeling by December 1, 1957. Appellant contends that the two clauses, when read together, clearly indicate that its liability for increased taxes was dependent upon the completion within the base year of the specified alterations undertaken by Mar Monte. An examination of the two provisions reveals that this contention is similarly of little real merit. Although the lease does obligate the lessor, in the
 
 *646
 
 absence of specified delays, to complete its alterations by December 1, it must be noted that appellant is given no right to cancel the lease unless the lessor “shall fail to deliver possession of the demised premises ... on or before March 15, 1958.” If appellant were correct in its contention that the two provisions were intended to modify one another, it is difficult to understand why the parties chose the date March 15, rather than the tax assessment date of March 3. Furthermore, it must be noted that appellant’s right to cancel the lease is not contingent upon the lessor’s failure to complete the alterations but is dependent upon its failure to deliver possession of the demised premises. It is certainly conceivable that this latter condition could be fulfilled while a large portion of the contemplated improvements to the remainder of the building were still unfinished, and that appellant, under such circumstances, would be limited to a cause of action for breach of covenant. Had the parties actually intended to make the additional rental provision dependent upon the assessment of the lessor’s improvements within the base year 1958-1959, they could easily have done so by including language to that effect. The fact remains that they did not do so and that appellant has failed to show any conflict or ambiguity between the various clauses which the parties did place in the lease. The case of
 
 Philipsborn
 
 v.
 
 Hutzler Bros. Co.
 
 (1916) 128 Md. 337 [97 A. 628], upon which appellant relies, is distinguishable for precisely that reason. The lease in that case was susceptible of the interpretation contended for by respondent because the tax clause specifically provided that the lessee was to be liable for any tax increase occurring
 
 after
 
 certain contemplated improvements had been assessed. Since the lease in the present case contains no such language, that decision is of little benefit to appellant.
 

 Turning now to appellant’s contention that the “additional rental” was not to encompass any tax increase caused by alterations on portions of the premises not covered by the lease, we are again confronted with language directly to the contrary. The lease provides that the additional rental is to be based upon the taxes levied upon “the land and building
 
 . . . in which said demised premises are located.
 
 . . .” (Emphasis ours.) The lease further provides that “The term ‘taxes’ . . . means only the ordinary City and County taxes upon the real property described on page 1 hereof, and the improvements thereon. ...”
 

 
 *647
 
 Appellant does not seriously contend that the above quoted language is unclear or ambiguous. Appellant does assert, however, that “the patent unfairness” of such a provision indicates that it could not have been intended by the parties. Under such circumstances, appellant contends that the court may ignore the plain wording of the lease and may hold it applicable solely to tax increases resulting from alterations to the demised premises.
 

 An examination of the authorities cited by appellant lends little support to its position. In
 
 Bryant Park Building, Inc.
 
 v.
 
 Acunto
 
 (1928) 133 Misc. 225 [231 N.Y.S. 451], for example, the lessee was obligated to pay 7% per cent of any increase “ ‘in the amount of real estate taxes. . . .’ ” The New York Municipal Court held that the tenant was not liable for an increase in taxes resulting from the landlord’s act of adding nine stories to the building, since the lease provision was applicable only to an increased real estate valuation and not to an increased building valuation. The decision was also based on a finding that the parties had in the past construed the provision as inapplicable to tax increases resulting from higher valuations of the building. In the case at bar, the language of the lease is clearly applicable to taxes upon the land
 
 and
 
 building. Furthermore, there was no showing that the parties had ever construed the provision to be more limited in scope.
 

 Seaboard Radio Broadcasting Corp.
 
 v.
 
 Yassky
 
 (1954) 176 Pa.Super. 453 [107 A.2d 618], is similarly of little assistance to appellant. The lease in that case provided that the lessee was to pay all taxes assessed “ ‘upon the demised premises and/or the building’ ” in excess of those assessed at the time of making the lease. The Pennsylvania Superior Court found the phrase “and/or” to be so ambiguous as to justify the conclusion that the tenant’s tax liability extended only to increased taxes upon “the demised premises.” Appellant has pointed to no such ambiguity in the instant case.
 

 Appellant asserts, however, that the additional rental provision is at least “extrinsically ambiguous” when applied to alterations on portions of the premises not covered by the lease. Appellant cites
 
 Pacific Indent. Co.
 
 v.
 
 California etc. Ltd.
 
 (1938) 29 Cal.App.2d 260 [84 P.2d 313], as authority for this proposition. In that case, the court held that a contract providing for indemnity against “ ‘any and all loss, damage, injury, liability . . . howsoever caused’ ” (p. 271) was extrinsically ambiguous when applied to liability caused
 
 *648
 
 by the indemnitee’s own negligence. The court reasoned that it would be highly unusual for an indemnitor to undertake such an obligation. The court therefore concluded that it could find such a duty only if the contract contained language so clear and explicit as to compel that interpretation. Since the clause actually employed by the parties was broad and comprehensive, it was provocative of some doubt, and it was therefore proper to admit evidence explaining what the parties had intended.
 
 [2]
 
 Appellant contends that the instant case presents a similar situation because it would be equally unusual to hold a lessee liable for tax increases resulting from alterations to portions of the building not included within the lease.
 

 In the ease at bar, however, the additional rental clause cannot properly be termed a “broad and comprehensive” provision. Appellant is specifically obligated to pay a designated portion of any increase in taxes on the land and building over those for the base year 1958-1959. Appellant itself concedes that the proportion of the tax increase (72 per cent) which it agreed to bear was based upon its occupancy of 72 per cent of the floor space of the entire building. We are of the opinion that such an arrangement, which represented an attempt by the parties to arrive at a fair method of allocating the tax burden, cannot be deemed so “unusual” as to give rise to an “extrinsic ambiguity.” Appellant was aware that it was not leasing the entire building, and it could certainly have anticipated that all future alterations and improvements might not be confined solely to the area included under its lease. Yet appellant expressly agreed to pay 72 per cent of the increased taxes on the entire building and the underlying land. Had appellant sought reformation of the lease against the original lessor, Mar Monte, it might have been able to show a mutual mistake resulting in a contract different from that intended. Since it did not do so, however, it is now foreclosed from showing that language plain on its face has hidden meaning known only to appellant and its original lessor.
 

 The trial court was correct in finding the lease to be devoid of ambiguity, hence we find no merit in appellant’s
 
 *649
 
 contention that it ought to have been allowed to introduce evidence of the preliminary negotiations between the original parties to the lease. In
 
 Barnhart Aircraft, Inc.
 
 v.
 
 Preston
 
 (1931) 212 Cal. 19 [297 P. 20], the court held that parol evidence of “surrounding circumstances” was admissible “ ‘only in cases where upon the face of the contract itself there is doubt and the evidence is used to dispel that doubt, not by showing that the parties meant something other
 
 than
 
 what they said but by showing what they meant
 
 by
 
 what they said.’ ” (Pp. 22-23.) The court, in quoting from 3 Jones, Commentaries on Evidence, section 454, went on to state: “ ‘ “It must be borne in mind that although declarations of the parties may in some cases be received to explain contracts or words of doubtful meaning, yet no other words can be added to or substituted for those of the writing. The courts are not at liberty to speculate as to the general intention of the parties, but are charged with the duty of ascertaining the meaning of the written language.” ’ ” (Pp. 23-24.) Similarly, in
 
 Sass
 
 v.
 
 Hank
 
 (1951) 108 Cal.App.2d 207, 211 [238 P.2d 652], the court stated: “Parties have a right to require their contracts to be in writing. When an agreement has been thus reduced the contractor has the right to rely strictly upon the written word. Before evidence of its meaning can be received it must first be determined by the court to be so ambiguous or uncertain that its meaning cannot be divined from its own language.”
 

 For the foregoing reasons, the lease in the instant case was susceptible of no other reasonable interpretation than that accorded it by the lower court.
 

 Judgment affirmed.
 

 Kaufman, P. J., and Agee, J.," concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied September 5, 1962.
 

 [1]
 

 Although Mar Monte Corporation was originally named as an additional defendant, the action against it was dismissed by plaintiff.
 

 [2]
 

 (But see
 
 Continental Mfg. Corp.
 
 v.
 
 Underwriters at Lloyds London
 
 (1960) 185 Cal.App.2d 545, 551-552 [8 Cal.Rptr. 276, 9 Cal.Rptr. 115], where the court distinguished the Pacific Indemnity case and noted that the court had there held only that the contract “ ‘was legally susceptible of the interpretation placed upon it by the learned trial judge, ’
 
 ”
 
 (P. 552.)